UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVE TURK, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GALE/TRIANGLE, INC., a New Jersey corporation; and PERFORMANCE TEAM FREIGHT SYSTEMS, INC., a California corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:16-cv-00783-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

By way of this wage and hour class action, Plaintiff Steve Turk—individually and on behalf of others similarly situated—asserts seven causes of action against Defendants Gale/Triangle, Inc. and Performance Team Freight Systems, Inc (collectively, "Defendants") stemming from Defendants' alleged failure to provide meal and rest periods as well as proper wages and wage statements to its employees, in violation of California labor laws and California's Unfair Competition Law, Bus. & Prof. Code § 17200 et seq. On November 18, 2016, the Court preliminarily approved a settlement reached by the parties. ECF No. 21. The Court then approved a stipulation to modify that agreement on December 1, 2016. ECF No. 23. Presently before the

Court is the parties' Joint Motion for Final Approval of Settlement, ECF No. 25, and Plaintiff's related unopposed Motion for Attorneys' Fees, ECF No. 24.  For the reasons set forth below, the Joint Motion for Final Approval of Settlement is GRANTED, and Plaintiff's Motion for Attorneys' Fees is GRANTED.[1]

## BACKGROUND[2]

Defendants are engaged in the transportation industry and employed Plaintiff and the Settlement Class Members as truck drivers and/or yard goats.  Plaintiff alleges that Defendants violated the California Labor Code by failing to pay Plaintiff and the Class for hours worked during rest periods and nonproductive time, failing to provide meal and rest periods, failing to issue accurate wage statements, and failing to pay wages due at termination.  Plaintiff additionally alleges a violation of California's Unfair Competition Law.  Defendants deny these claims.

As described in the parties' present Joint Motion as well as in their Motion for Preliminary Approval, ECF No. 8, the parties engaged in significant discovery over the course of the three years this case has been pending.  In addition to formal discovery, the parties informally exchanged a great deal of information in preparation for mediation.  Intensive, arms-length mediation with a nationally recognized mediator took place over one full day and resulted in a broad agreement to resolve the pending dispute.  That broad agreement materialized into the present Settlement Agreement which was preliminarily approved by the Court in November 2016.

The proposed Settlement will resolve the wage and hour class action claims set forth in Plaintiff's First Amended Complaint for Plaintiff Turk and 364 other similarly situated employees of Defendants ("the Settlement Class" or "Settlement Class

---

[1] Because oral argument would not have been of material assistance, the Court ordered these matters submitted on the briefs.  E.D. Cal. Local R. 230(g).

[2] The following recitation of facts is taken, sometimes verbatim, from the parties' Joint Motion. These background facts are undisputed, though Defendants contest Plaintiff's claims.

Members"). As provided in the Court's Order Granting the parties' Stipulation to Modify and Preserve the Settlement Agreement, ECF No. 23, the Settlement Class is made up of "any and all individuals who were employed by either defendant at any time, and for any period, in California as a driver of trucks or yard goats, between April 15, 2010 and April 20, 2016."

Under the terms of the Settlement Agreement, Defendants have agreed to pay a Gross Settlement Amount ("GSA") of $650,000, which funds will be distributed with no reversion to Defendants. Attorneys' fees ($195,000), litigation costs ($17,925), the enhancement to Plaintiff Turk as the class representative ($10,000), settlement administration costs ($9,499), and California Private Attorneys General Act of 2004 ("PAGA") allocation to California Labor and Workforce Development Agency ("LWDA") ($7,500) will be deducted from the GSA, resulting in a Net Settlement Value ("NSV") of $410,076. Each Settlement Class Members' share of the NSV is based on the number of weeks worked, which number has not been disputed by any of the Class Members. The average Settlement Class Member is estimated to receive over $1,100, and the highest individual settlement is estimated at $9,817.02. The parties have executed the Court-approved plan for providing notice to the class, and the response of the Settlement Class Members was positive, with zero Class Members objecting to the terms of the Settlement and only four opting out.

## ANALYSIS

### A. Final Approval of Settlement

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of

the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). Here, as to class certification, the Court has already determined that certification of the Settlement Class solely for purposes of settlement is appropriate in that: (1) the Class Members are so numerous that joinder of all Class Members is impracticable; (2) there are questions of law and fact common to the Class which predominate over any individual questions; (3) Plaintiff's claims are typical of the claims of the Settlement Class; (4) Plaintiff and his counsel have fairly and adequately represented and protected the interests of the Class; and (5) a class action, and class-wide resolution of the action via class settlement procedures is superior to other available methods for the fair and efficient adjudication of the controversy. See Order Preliminarily Approving Settlement and Release Agreement, ECF No. 21, at 2. No party or class member has objected to certification of the Settlement Class, and there is nothing before the Court to suggest that these prior findings should not be affirmed. The Court therefore affirms its prior certification of the Class for settlement purposes inasmuch as the requirements of Rule 23(a) and (b) are satisfied.

With regard to the settlement agreement itself, "[t]he 'universally applied standard' in determining whether a court should grant final approval to a class action settlement is whether the settlement is 'fundamentally fair, adequate, and reasonable.'" Ntn'l. Rural Telecomms. Cooperative v. DirectTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) (quoting 5 Moore Federal Practice § 23.85). A district court "may consider some or all of the following factors" when assessing whether a class action settlement agreement is "fair, reasonable, and adequate":

> [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

///

Rodriguez v. W. Pub. Corp., 563 F.3d 948, 963 (9th Cir. 2009) (quoting Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003)), overruled on other grounds by Dukes v. Wal–Mart Stores, Inc., 603 F.3d 571, 617 (2010); Staton, 327 F.3d at 959. The Ninth Circuit has made clear that these factors are not an "exhaustive list of relevant considerations," and that "the relative degree of importance to be attached to any particular factor will depend" on the unique circumstances of each case. Officers for Justice v. Civil Serv. Comm'n of City of S.F., 688 F.2d 615, 625 (9th Cir. 1982).

Additionally, the Court must ensure that "the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ." Id. However, "[e]ven in class action contexts, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. . . . Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." Elkins v. Equitable Life Ins. Co. of Iowa, No. CivA96-296-Civ-T-17B, 1998 WL 133741, *28 (E.D. Cal. Jan. 27, 1981) (internal citations omitted).

Based on the facts described above and the Court's weighing of the strength of the case, the risks of litigation, and the costs of continued litigation—and especially in light of the fact that (1) the proposed Settlement Agreement emerged after extensive discovery and a day long arms-length mediation, and (2) no Class Member has filed objections and only four have opted out—the Court finds the terms of the Settlement Agreement to be fair, reasonable, and adequate. Moreover, "With regard to class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases." West v. Circle K Stores, Inc., No. Civ. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558, *17-18 (E.D. Cal. Oct. 19, 2006); see also Nat'l Rural Telecomms., 221 F.R.D. at 528 ("great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."). Class Counsel has represented that the

///

///

instant Settlement Agreement is in the best interest of the Settlement Class Members, and the Court has no reason to believe otherwise.[3]

Likewise, the Court finds the proposed payment of $9,499 to the Settlement Administrator and $7,500 of the PAGA allocation to LWDA to be fair, reasonable, and in line with similar awards in other cases. The Court therefore GRANTS final approval of the Settlement Agreement.[4]

### B. Attorneys' Fees

Where the payment of attorneys' fees is part of the negotiated settlement, the fee settlement must be evaluated for fairness in the context of the overall settlement. Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th Cir. 2002). Courts must ensure that the attorneys' fees awarded in a class action settlement are reasonable, even if the parties have already agreed on an amount. In re Bluetooth Headset Prods. Liability Litig., 654 F.3d 935, 941 (9th Cir. 2011). In the Ninth Circuit, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) (citing In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295-96 (9th Cir. 1994)).

Under the percentage-of-recovery method, the prevailing attorneys are awarded a percentage of the common fund recovered for the class. Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). In applying this method, courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record. Id.; In re Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."). "The typical range of acceptable attorneys' fees under this approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the

---

[3] The Court similarly finds no indication of collusion between the negotiating parties.

[4] The requested attorneys' fees, litigation costs, and representative enhancement are discussed in further detail below; to the extent such payments are reflected in the Settlement Agreement, they are also approved as fair and reasonable.

6

total settlement value, with 25 percent considered a benchmark percentage." Schiller v. David's Bridal, Inc., No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 (E.D. Cal. 2012) (citing Powers v. Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000)). But if attorney's fees deviate from the 25% benchmark, "it must be made clear by the district court how it arrives at the figure ultimately awarded." Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989); see also In re Bluetooth, 654 F.3d at 942.

Under the lodestar method, the prevailing attorneys are awarded an amount calculated by multiplying the hours they reasonably expended on the litigation times their reasonable hourly rates. Staton, 327 F.3d at 965; Schiller, 2012 WL 2117001, at *15. This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." In re Bluetooth, 654 F.3d at 941-42. Even if the court chooses to apply the percentage-of-recovery method, calculation of the lodestar amount may be used as a crosscheck to assess the reasonableness of the percentage award. Vizcaino, 290 F.3d at 1050–51; Khanna v. Intercon Sec. Systems, Inc., 2:09-cv-2214-KJM-EEFB, 2014 WL 1379861 (E.D. Cal. April 8, 2014) ("When a court uses the lodestar as a crosscheck to a percentage claim of fees, it need only make a "rough calculation.").

Regardless of whether the court uses the percentage approach or the lodestar method, the main inquiry is whether the end result is reasonable. Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. Vizcaino, 290 F.3d at 1048–50. Based on these factors, the percentage amount can be adjusted upward or downward depending on the circumstances of the case.

///

Here, Plaintiff's counsel seeks an award of $195,000, which amounts to 30% of the GSA. Based on the Court's review of the case, the positive results received after three years of litigation that included extensive discovery and mediation, the risks taken on by counsel (and specifically, by accepting the case on contingency), and the experience and skill of counsel, the Court finds this award to be fair and reasonable. Though 30% represents the higher end of what is typically deemed acceptable in other cases applying the percent-of-recovery method, the Court finds a 5% increase from the standard 25% benchmark is warranted under the circumstances. Moreover, a comparison to awards typically made in common fund cases suggests that an award of 30% is appropriate here. See In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) ("[I]n most common fund cases, the award exceeds th[e] benchmark."); In re Activision Sec. Litig., 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Lastly, Defendants have agreed to the requested fees and no Class Member has objected, further supporting a finding that the fees are reasonable.

Applying a roughly calculated lodestar crosscheck confirms that the requested amount is fair and reasonable. At the time of briefing, counsel had expended 513.95 hours of attorney work on this case. Those hours, counsel claims, were "necessary to achieve the highly favorable result attained for the Class Members." Mot. Attys' Fees at 10. The Court has no reason to believe a favorable result could have been achieved in less time, nor is there any indication that counsel spent unnecessary time on the case.

As for counsel's hourly rates, a range of $300 per hour for associates to $800 per hour for the most senior partner is high in this district.[5] As many cases in the Eastern

---

[5] Counsel contends its rates "are commensurate with the prevailing market rates in Central and Northern California" and that the "reasonableness of Class Counsel's hourly rates has been cited and approved by other judges in recent actions . . . ." Id. But while the Court must certainly take into account the "rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney" as "evidence of the prevailing market rate," United Steelworkers of Am., 896 F.2d at 407, the rate determinations by other district judges are not binding on the Court.

District observe, "prevailing hourly rates in the Eastern District of California are in the $400/hour range," with some courts noting a higher range for partners, commensurate with experience. Bond v. Ferguson Enterprises, Inc., 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011); see also Franco v. Ruiz Food Products, Inc., 1:10-CV-02354-SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012); Gong-Chun v. Aetna Inc., 1:09-CV-01995-SKO, 2012 WL 2872788, at *21 (E.D. Cal. July 12, 2012); Garcia v. Gordon Trucking, Inc., 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *9 (E.D. Cal. Oct. 31, 2012). Thus, the Court finds counsel's reference to a current lodestar of $259,233 based on its own hourly rates to be high. Regardless, counsel appears to have taken this into consideration in its request of $195,000, which total would reflect a more appropriate range of approximately $200 to $600 per hour depending on seniority.

For these reasons, 30% of the common fund, or $195,000, is a fair and reasonable attorneys' fees award in this case.

Counsel additionally requests reimbursement of litigation costs in the amount of $17,925. Counsel represents that all costs are related to this litigation including filing fees, travel, mediation fees, copy fees, and postage. Mot. Attys Fees at 11. As $17,925 falls well below the $30,000 limit on costs to which the parties agreed in the Settlement, the Court finds these fees to be reasonable and therefore reimbursable.

Finally, the Plaintiff requests an incentive payment of $10,000 for Representative Plaintiff Turk. Based on counsel's representations that Plaintiff Turk has been involved in every step of the litigation, has been cooperative and helpful in gathering facts and support, and has taken on a risk by suing his former employer, the Court finds this enhancement also to be fair and reasonable. Moreover, as with the attorneys' fees request, Defendants have agreed to the award and no Class Member has objected. As such, the Court approves an incentive payment of $10,000 to Plaintiff Turk.

///

///

**CONCLUSION**

For the reasons set forth above, the parties' Joint Motion for Final Approval of Settlement, ECF No. 25, is GRANTED and Plaintiff's Motion for Attorneys' Fees, ECF No. 24, is GRANTED as requested.

IT IS SO ORDERED.

Dated: September 20, 2017

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE